**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

In re:  Case No.: 3:12-bk-5762-JAF

WILLIAM SAVILONIS  Chapter 13

Debtor.
_____/

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

This case is before the Court upon William Savilonis', Debtor, Amended Motion to Modify Plan After Confirmation (the "Motion to Amend"), to which the Chapter 13 Trustee (the "Trustee") filed an Objection. (Docs. 52, 54). The Court held a hearing on the Motion to Amend and took the matter under advisement. Upon consideration of the parties' evidence and arguments, the Court concludes that the Motion to Amend should be denied.

**Findings of Fact**

On August 30, 2012, Debtor filed a petition for relief under Chapter 13 of the Bankruptcy Code. (Doc. 1). At the time Debtor filed his petition, he reported total assets of $42,372.77 versus total liabilities of $242,491.42 including $209,265.00 in unsecured debt. (Doc. 1 at 9). On September 3, 2013, Debtor filed, among other things, first Amended Schedules B, C, I, and J. (Doc. 25). Pursuant to the first Amended Schedule I, Debtor has stable employment as a marketing director at Idaho Potato Commission and earns from his employment approximately $7,436.28 per month. (Doc. 25 at 5). From his income, Debtor reported $2,889.68 in monthly payroll deductions. (Doc. 25 at 5). After accounting for his deductions, Debtor represented a net monthly income of $4,546.60. (Doc. 25 at 5). Against his income, Debtor claimed $5,694.81 in necessary, monthly expenses, resulting in a shortfall of $1,148.21 in Debtor's monthly budget.

(Doc. 25 at 7). The expenses included, but were not limited to the following itemized expenditures: rent or mortgage - $1,799, electricity and heating fuel - $225, water and sewer - $100, telephone - $102, internet - $13, home maintenance - $125, food - $570, clothing - $175, laundry and dry cleaning - $90, transportation not including car payments - $300, medical and dental expenses - $316, recreation, clubs and entertainment - $175, homeowner's or renter's insurance - $100, life insurance - $38, health insurance - $67, auto insurance - $173, taxes other than withholding - $95, auto installment payments - $739.81, storage lockers - $300, son's college books & fees - $92, son's fuel card - $100. (Doc. 25 at 7). On his Form B22C, Debtor also reported that he was making a $100 monthly charitable contribution even though he did not list it on his original Schedule J. (Trustee's Ex. 5, Doc. 1 at 24). However, Debtor's 2013 Income Tax Return established that in 2013 Debtor reported he made charitable contributions in the amount of $720. (Trustee's Ex. 7).

On August 31, 2012, Debtor filed a Chapter 13 plan, in which he proposed to pay $1,155.35 per month for a period of sixty months, to which the Trustee objected. (Doc. 5, Doc. 11). The case proceeded to a hearing after which, on November 22, 2013, the Court entered an Order Confirming Chapter 13 Plan Allowing Claims and Directing Distribution (the "Confirmation Order"). (Trustee's Ex. 2). Pursuant to the Confirmation Order, Debtor must pay the Trustee plan payments in the amount of $1,155.35 for months 1-14 and $2,500.00 for months 15-60. (Trustee's Ex. 2). The Confirmation Order also provides that the unsecured claimants must receive a distribution of at least $72,168.00 in order for Debtor to obtain a discharge of his debts. (Trustee's Ex. 2).

On February 27, 2014, Debtor filed, among other things, second Amended Schedules I and J, which disclosed that Debtor's monthly wages increased to $7,733.74 and his average

monthly income increased from $4,546.60 to $4,704.52. (Trustee's Ex. 4). Debtor also reported increased expenses from $5,694.81 to $5,915.59 resulting in a shortfall of $1,211.07 in Debtor's monthly budget. (Trustee's Ex 4). Debtor reported that his bill for electricity, heat and natural gas increased from $225 to $232.32, and his bill for water, sewer and garbage collection increased from $100 to $138. (Trustee's Ex. 4). Debtor also reported that his 22 year-old son was his dependent[1] and now, in addition to $92 for his son's college books and fees and $100 for his son's fuel card, he was incurring the following monthly expenses: 1) $100 for his son's food, 2) $100 for his son's clothes, and 3) $100 for his son's vehicle expenses. (Trustee's ex. 4). However, Debtor did not claim his son as a dependent on his 2012 or 2013 Income Tax Returns. (Trustee's Exs. 6, 7).

Thereafter, Debtor filed the Motion to Amend, in which he asserted that due to unanticipated financial problems, including but not limited to substantial medical expenses and his son's loss of employment, Debtor has fallen behind on his payments. (Doc. 46 at 1). Debtor further asserted that catching up and maintaining payments at the level called for by the Plan, $1,155.35 per month for months 1-14 and $2,500.00 per month for months 15-60, would be a hardship for him. (Doc. 46 at 1). By virtue of the modified Chapter 13 plan, Debtor proposes to pay $1,155.35 in months 1-5, $2,500 in month 6, and $822 in months 7-60.[2] (Doc. 46 at 3). The Trustee objected, claiming that the fact that Debtor's son lost his employment is irrelevant because his son's income was not included in Debtor's household income and that "Debtor is proposing to modify the plan in violation of the Bankruptcy Code." (Doc. 47 at 1). The Trustee also points out that Debtor did not present any financial information that would indicate an increase in his expenses. (Doc. 47 at 1).

---

[1] On his original Schedule I filed on August 30, 2012, Debtor reported that he did not have any dependents. (Doc. 1 at 22).
[2] At the hearing, Debtor requested that the modified Chapter 13 plan apply retroactively.

3

At the hearing, Debtor testified that his financial situation deteriorated because he incurred "unforeseen medical bills." Debtor testified that he suffered a back injury, had an MRI and was referred to a surgeon who recommended physical therapy. Debtor must attend physical therapy sessions two times per week for four weeks, but he decided to attend the sessions three times a week. Although Debtor's health insurance covers 80% of his medical bills, Debtor paid $89.99 out of pocket for the MRI and pays a $15 co-pay for the physical therapy sessions. Debtor is also on prescription pain medication for which he pays an "additional $50 per month." Debtor received new glasses but failed to indicate how much he paid for them. Debtor also had a dental procedure, which required him to contribute $500. Debtor believes he will need more dental work in the future. Debtor stated that he needs to have "a bunch of follow up visits" as well but failed to indicate how much he will have to pay for them. Debtor also indicated that he purchased an extended warranty on his vehicle but again failed to specify how much he paid. Moreover, Debtor testified that he had to pay for his son's medical bills and had to help him out financially because his son dropped out of college, obtained employment, and subsequently lost it. Nevertheless, Debtor testified that his son secured employment at the "air/heating company" and that he was employed at the time of the hearing. Other expenses were in existence at the time of confirmation when Debtor represented he would make the payments under the plan.

### Conclusions of Law

Section 1329 of the Bankruptcy Code permits a debtor, any time after confirmation, and before all plan payments have been made, to seek an increase or reduction in the amounts of payments on claims of a particular class provided for by the plan. "A judicially created standard has emerged for determining when a postconfirmation modification should be permitted." 7 Norton Bankruptcy Law and Practice § 150:2 (3d ed. 2014). Generally, a modification is

permitted when the debtor proves that there has been a change in circumstances that necessitates a change in the plan. Id.; see, e.g., In re McNulty, 142 B.R. 106, 109 (Bankr. D.N.J. 1992). "The requirement that the debtor show a change in circumstances may be due to the doctrine of 'res judicata.'" 7 Norton Bankruptcy Law and Practice § 150:2 (3d ed. 2014). In other words, all participants in the bankruptcy case are barred by the doctrine of res judicata from asserting matters they could have raised in the bankruptcy proceedings before confirmation. In re Euler, 251 B.R. 740, 746 (Bankr. M.D. Fla. 2000); In re Butler, 174 B.R. 44, 46 (Bankr. M.D.N.C. 1994) ("As a matter of sound public policy, as well as appropriate judicial economy, there is no reason why either a creditor or a debtor should be permitted to relitigate issues which were decided in the confirmation order or which were available at the time of confirmation but not raised by the parties."). That is because, a single bankruptcy court may handle hundreds of cases filed under Chapter 13 each week and their orderly disposition depends on the finality of confirmed plans. For this reason, in this division, once a debtor requests confirmation, which is unopposed and no one raises the issue of feasibility of the proposed plan, there is a presumption that the debtor has a current ability to make the plan payments. Furthermore, the Court proceeds on a presumption that the plan is proposed by an honest debtor. Consequently, if a subsequent modification of the plan is sought the debtor must show that the substantial, unanticipated change in circumstances rendered him unable to make plan payments.

Bankruptcy courts vary widely over what they consider to be a substantial, unanticipated change in circumstances. 7 Norton Bankruptcy Law and Practice § 150:2 (3d ed. 2014). Generally, bankruptcy courts consider a change in: (1) the debtor's income or expenses; (2) the debtor's medical condition; or (3) the debtor's post-confirmation conduct, in contemplating changed circumstances. In re Nelson, 189 B.R. 748, 751 (Bankr. D. Minn. 1995). "When a

proposed modification to the plan would reduce the plan payments, the burden falls on the debtor to demonstrate that her circumstances have sufficiently changed adversely, to warrant the modification." Id.

A review of Debtor's evidence indicates that he has failed to offer credible evidence sufficient to meet his burden under the change of circumstances test. Debtor is a single man who is no longer financially responsible for the care of his children. He has demonstrated stable and continuous employment. Debtor's income has increased, but unfortunately he has also increased his voluntary and unnecessary expenses. Debtor actively subsidizes his 22-year-old son, who continues to experience financial instability, and asks the Court to conclude that such conduct constitutes a change of circumstances sufficient to warrant modification. Specifically, Debtor believes he needs to give his son $492[3] per month because his son is unable "to make the ends meet." The Court does not find that such subsidy warrants modification. If Debtor wishes to receive a discharge, his compliance with the Chapter 13 plan is a priority that should not yield to his non-dependent son's financial needs.

The benefits conferred upon a debtor under bankruptcy law are of a substantial nature[4]; however, these benefits are not rights but privileges. In re Bolton, 43 B.R. 48, 50 (Bankr. E.D.N.Y. 1984). "There is no constitutional right to obtain a discharge of one's debts in bankruptcy." United States v. Kras, 409 U.S. 434, 446 (1973). The bankruptcy laws "relieve the honest debtor from the weight of oppressive indebtedness, and permit him to start afresh free from the obligations and responsibilities consequent upon . . . misfortunes." Williams v. U. S. Fidelity & Guaranty Co., 236 U.S. 549, 554–55 (1915). They offer the debtor "a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-

---

[3] At the hearing, Debtor testified that he gives his son $100-$200 per month. It is unclear as to why his testimony is inconsistent with his amended Schedule J.

[4] Debtor attempts, among other things, to discharge approximately $137,097.00 in unsecured debt.

6

existing debt." Local Loan Co. v. Hunt, 292 U.S. 234, 244 (1934). "The imposition upon a debtor of the obligation to conform his conduct to the statutory framework or to give a reasonable justification for failing to have done so is certainly a reasonable *quid pro quo* for the extension of benefits of bankruptcy." In re Bolton, 43 B.R. at 51 (emphasis in original). Debtor's adult son's financial needs were not unanticipated and hardly constitute a reasonable justification for Debtor's failure to conform to his Chapter 13 plan.

Moreover, Debtor indicated that he had "unanticipated medical expenses" after the Court confirmed the plan. Debtor's second Amended Schedule J filed with his Motion to Amend indicates that he spends $316 monthly on his medical bills. Interestingly, Debtor represented that he was spending that amount when he filed his petition for bankruptcy on August 30, 2012, and when he filed his first Amended Schedule J on September 3, 2013. Thus, it is unclear as to whether these "unanticipated medical expenses" are included in the $316, the amount Debtor apparently was spending on monthly medical and dental expenses prior to confirmation. However, even if the Court found that the "unanticipated medical expenses" were not included in the amount listed by Debtor on his second Amended Schedule J, these expenses still do not justify Debtor's request to amend his plan payment from $2,500 to $822 for the remainder of the life of the plan. Debtor established that he needs to pay 1) a $15 co-pay three times a week for four weeks to attend his physical therapy sessions, and 2) a $50 co-pay for his pain medication. Debtor also testified he had to pay $89.99 for an MRI and $500 to have a dental procedure. If Debtor wanted the Court to amend the plan in a manner requested in the Motion to Amend he would have to establish he now needs to incur $1678 per month in necessary medical bills. Consequently, the Court finds that Debtor has not demonstrated cause to modify the plan.

The Court will enter a separate order consistent with these Findings of Fact and Conclusions of Law.

**DATED** this 9 day of July, 2014 in Jacksonville, Florida.

*/s/ Jerry A. Funk*

_____
**JERRY A. FUNK**
**United States Bankruptcy Judge**